UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORNERSTONE CONSTRUCTION CONSORTIUM, LLC.<br><br>       Plaintiff,<br><br>  -against-<br><br>KANG SUK CONSTRUCTION, INC. and YUN KOO CHI,<br><br>       Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cornerstone Construction Consortium, LLC, by its attorneys Yoon LLP, as and for its Complaint against defendants Kang Suk Construction, Inc. and Yun Koo Chi (collectively "Defendants"), hereby alleges as follows:

## PARTIES

1. Plaintiff Cornerstone Construction Consortium, LLC ("Cornerstone") was at all times relevant hereto and still is a limited liability corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 375 Sylvan Ave., Suite 26, Englewood Cliffs, New Jersey 07632.

2. Defendant Kang Suk Construction, Inc. ("Kang Suk") was at all times relevant hereto and still is a corporation organized and existing under the laws of the State of New York with its principal place of business at 219-03 Northern Blvd., Suite 5, Bayside, New York 11361.

3. Upon information and belief, Defendant Yun Koo Chi ("Chi") was at all times relevant hereto and still is a resident of the State of New York residing at 16360 19th Avenue, Whitestone, New York 11357.

1

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States or a citizen of a State and a citizen of a foreign state.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) or (2) because Defendants reside in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## BACKGROUND FACTS

6. At all times relevant hereto, Terranos Development Group, Inc. ("Terranos") was and still is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 375 Sylvan Avenue, Suite 26, Englewood Cliffs, New Jersey 07632. Terranos is the sole member of Cornerstone.

7. Mr. Suntae Kim (also known as Vinny Kim) ("Kim") is the president and sole owner of Terranos. Kim was at all times relevant hereto and still is a resident of the State of New Jersey.

8. Kim has known and has been doing business with CJ TMI Manufacturing America, LLC ("CJ"), a subsidiary of CJ Group in Korea, for many years, has maintained good business and personal relationships with CJ and its representatives, and has developed goodwill with CJ from his efforts and hard work.

9. In or around February 2017, Kim, through his acquaintance at CJ, learned about a new construction project that CJ was about to embark on at 2 Applegate Drive, Robbinsville, New Jersey 08691 ("CJ Project") and decided to submit a bid proposal to CJ to act as the general contractor for the CJ Project.

10. Since the CJ Project was a large construction project involving various tasks and professional knowledge of various fields, Kim decided to look for other construction companies

2

that could potentially work as subcontractors and/or work together in connection with the CJ Project.

11. After contacting several construction companies, Kim chose defendant Kang Suk and A-Tec NYC, Inc. ("A-Tec") (Kang Suk and A-Tec are hereinafter collectively referred to as the "Other Members").

12. Even though Kim loosely referred the Other Members as partners for the CJ Project, it was understood by Kim and the Other Members and Chi, the principal of Kang Suk, from the outset that it was Kim's longstanding relationship and goodwill with CJ that would increase their chance of winning the bid and that the actual roles of Kang Suk and A-Tec would be those of subcontractors for Kim. However, for purposes of submitting a bid to CJ, the parties agreed to form a consortium named Cornerstone.

13. In or around late March, 2017, Kim submitted a bid proposal for the CJ Project in Cornerstone's name in anticipation of Cornerstone being legally formed soon thereafter.

14. Kim was subsequently notified by CJ that his bid was accepted.

15. On or around April 5, 2017, Kim entered into a contract with CJ for the CJ Project as the President of Cornerstone, again, in anticipation of Cornerstone being formed.

16. At all times from CJ's perspective, it was entering into a contract with Cornerstone due to its longstanding goodwill and relationship with Kim.

17. As the first step of the CJ Project, Cornerstone entered into the demolition Phase I during which the project site was demolished and prepared for subsequent construction at the construction site.

18. When Kim was asked to send the wire information by CJ on or around April 5, 2017, Cornerstone had not yet been formed. As Kim did not want to delay the CJ Project, he asked for CJ's understanding and temporarily used Kang Suk's bank account to receive the payments during the demolition Phase I.

19. However, all parties involved, including Defendants, clearly understood and acknowledged that Kang Suk's account, Chase Bank Account ending in account number 6765

("Kang Suk Account"), was only temporarily being used until Cornerstone is formed and opens a bank account under its name.

20. For the demolition Phase I, total of $524,200 was sent to Kang Suk Account, from which Kang Suk paid sub-contractor's invoices and the salaries for Cornerstone, Kang Suk and A-Tec.

21. On or around April 17, 2017, Cornerstone was formed and opened a bank account under its name soon thereafter.

22. Kim procured additional demolition work from CJ in late May 2017 for an aggregate amount of $360,000 ("demolition Phase II").

23. On or about June 5, 2017, Kim notified CJ of Cornerstone's new bank account information and asked CJ to wire transfer all the payments to that account thereafter.

24. It was clear to all parties involved, including Defendants, that that CJ would send all subsequent payments due under the contract, including the demolition Phase II, to Cornerstone's new account.

25. Despite Kim's notice and request, however, on or about June 8, 2017, CJ inadvertently wired $108,000, the first payment for the demolition Phase II, to Kang Suk Account instead of Cornerstone's new account (the "Subject Fund").

26. As soon as Kim discovered the erroneous wire transfer at issue by CJ, Kim contacted the principal of Kang Suk, Chi, and asked him to return the above-mentioned Subject Fund at issue to Cornerstone.

27. Although he also knew that the payment was wired into Kang Suk Account due to CJ's mistake and Kang Suk had no right to keep that Subject Fund in Kang Suk Account, Chi refused to return the Subject Fund to Cornerstone and said he needed further examination to decide how to deal with it.

28. Upon information and belief, while holding the Subject Fund in its account, Defendants paid salaries for June 2017 only to Kang Suk and his daughter who managed

4

accounting for the CJ Project, whereas he failed and refused to pay the same salaries to Cornerstone and A-Tec.

29. After Kim's repeated oral requests to Defendants which were ignored, Cornerstone sent a demand letter dated August 8, 2017 in which it formally demanded that Defendants immediately return the Subject Fund mistakenly wired into Kang Suk Account by CJ, and wrongfully kept by Defendants, but to no avail.

30. Defendants have failed and refused to return the Subject Fund erroneously wired to and wrongfully kept in Kang Suk Account, and despite Cornerstone's continuous demands, continue to exercise dominion and control over the Subject Fund.

## FIRST CLAIM FOR RELIEF
### (Conversion)

31. Cornerstone incorporates by reference each of the foregoing allegations set forth in paragraphs 1 to 30 as though fully set forth herein.

32. Cornerstone has possessory right and interest in the Subject Fund and is entitled to ownership, possession and control of the Subject Fund since all payments from CJ for the demolition Phase II were to be wired to Cornerstone's account.

33. From the time CJ inadvertently wired the Subject Fund to Kang Suk Account instead of Cornerstone's new account and at all times relevant hereto, Defendants have taken wrongful ownership, possession and control of the Subject Fund maintained in Kang Suk Account, and wrongfully enjoyed possessory rights and interests therein.

34. Defendants exercised unauthorized and unjustified dominion over the Subject Fund by refusing to return the Subject Fund to Cornerstone although Defendants knew that the Subject Fund belonged to Cornerstone and that neither Kang Suk nor Chi had right to keep the Subject Fund in Kang Suk Account.

35. Upon information and belief, while holding the Subject Fund in its account and refusing to return the Subject Fund to Cornerstone, Defendants also without authority or

5

justification paid salaries for June 2017 only to Kang Suk and Chi's daughter who managed accounting for CJ Project, whereas Defendants failed and refused to pay the same salaries to Cornerstone and A-Tec.

36. Defendants' unauthorized and wrongful use of and interference with the Subject Fund were in derogation of Cornerstone's possessory rights and interests herein and certainly were to Cornerstone's financial detriment.

37. After repeated oral requests from Cornerstone and Kim to Defendants which were ignored, Cornerstone sent a demand letter dated August 8, 2017 in which it formally demanded that Defendants immediately return the Subject Fund mistakenly wired to Kang Suk Account by CJ, and wrongfully kept by Defendants, but to no avail.

38. Defendants have failed and refused to return the Subject Fund, and despite Cornerstone's continuous demands, continue to exercise dominion and control over the Subject Fund.

39. As a direct and proximate result of Defendants' conversion and wrongful taking of the Subject Fund, Cornerstone has suffered and will continue to suffer monetary damages in an amount exceeding $75,000, for which Defendants are liable.

### SECOND CLAIM FOR RELIEF
**(Unjust Enrichment)**

40. Cornerstone incorporates by reference each of the foregoing allegations set forth in paragraphs 1 to 39 as though fully set forth herein

41. Upon information and belief , while holding the Subject Fund inadvertently wired from CJ to Kang Suk Account and refusing to return the Subject Fund to Cornerstone, Defendants paid salaries for June 2017 only to Kang Suk and Chi's daughter who managed accounting for CJ Project, whereas Defendants failed and refused to pay the same salaries to Cornerstone and A-Tec.

42. Accordingly, Defendants have been unjustly enriched at the expense of Cornerstone by taking the ownership of the Subject Fund and refusing to return the Subject Fund.

43. It is against equity and good conscience to permit Defendants to wrongfully retain the Subject Fund.

44. As a direct and proximate result of Defendants' conversion and wrongful taking of the Subject Fund, Cornerstone has suffered and will continue to suffer monetary damages in an amount exceeding $75,000, for which Defendants are liable.

## THIRD CLAIM FOR RELIEF
**(Constructive Trust)**

45. Cornerstone incorporates by reference each of the foregoing allegations set forth in paragraphs 1 to 44 as though fully set forth therein.

46. For purposes of submitting a bid to CJ during the bidding process, all parties involved, including Defendants, agreed to form a consortium named Cornerstone, and work together for the CJ Project and entered into fiduciary relationship with one another.

47. By agreeing to form a consortium, all parties involved, including Defendants, promised, expressly or impliedly, to cooperate and work together in connection with the CJ Project.

48. When Kim was asked to send the wire information by CJ on or around April 5, 2017, Cornerstone has not yet been formed.

49. As Kim did not want to delay the CJ Project, he asked for CJ's understanding and temporarily used Kang Suk Account to receive the payments during the demolition Phase I.

50. However, all parties involved, including Defendants, clearly understood and acknowledged that Kang Suk Account was only temporarily being used until Cornerstone is formed and opens a bank account under its name.

51. In reliance of fiduciary relationship created, Kim requested that payments from CJ for the CJ Project be wired initially to Kang Suk Account as stated in Paragraphs 48 to 50, and in reliance of such fiduciary relationship, the Subject Fund was wired into Kang Suk Account.

52. On or about June 5, 2017, Kim notified CJ of Cornerstone's new bank account information and asked CJ to wire transfer all the payments to that account thereafter.

53. It was clear to all parties involved, including Defendants, that CJ would send all subsequent payments due under the contract, including the demolition Phase II, to Cornerstone's new account.

54. On or about June 8, 2017, CJ inadvertently wired the Subject Fund to Kang Suk Account instead of Cornerstone's new account.

55. In reliance on the understanding and acknowledgment among all parties involved, including Defendants, as soon as Kim discovered the erroneous wire transfer at issue by CJ, Kim contacted Defendants and asked them to return the Subject Fund to Cornerstone.

56. Although Defendants clearly knew that the payment was wired to Kang Suk Account due to CJ's mistake and Kang Suk had no right to keep the Subject Fund in Kang Suk Account, Defendants refused to return the Subject Fund to Cornerstone.

57. Upon information and belief, while holding the Subject Fund in its account, Defendants paid salaries for June 2017 only to Kang Suk and Chi's daughter who managed accounting for the CJ Project, whereas he failed and refused to pay the same salaries to Cornerstone and A-Tec without justification.

58. Defendants were unjustly enriched as they have failed and refused to return the Subject Fund erroneously wired to and wrongfully kept in Kang Suk Account despite Cornerstone's and Kim's continuous demands.

59. As a direct and proximate result of Defendants' conversion and wrongful taking of the Subject Fund, Cornerstone has suffered and will continue to suffer monetary damages in an amount exceeding $75,000, for which Defendants are liable.

60. Cornerstone is also entitled to a full accounting of the gains made by Defendants from their interference with and wrongful taking of the Subject Fund and is entitled to impose a constructive trust on all proceeds obtained by Kang Suk that Defendants improperly kept or gained.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty Against Chi)**

61. Cornerstone incorporates by reference each of the foregoing allegations set forth in paragraphs 1 to 60 as though fully set forth therein.

62. For purposes of submitting a bid to CJ during the bidding process, all parties involved, including Defendants, agreed to form a consortium named Cornerstone, and work together for the CJ Project and entered into fiduciary relationship with one another.

63. By agreeing to form a consortium, all parties involved, including Defendants, promised, expressly or impliedly, to cooperate and work together in connection with the CJ Project.

64. When Kim was asked to send the wire information by CJ on or around April 5, 2017, Cornerstone had not yet been formed.

65. As Kim did not want to delay the CJ Project, he asked for CJ's understanding and temporarily used Kang Suk Account to receive the payments during the demolition Phase I.

66. However, all parties involved, including Defendants, clearly understood and acknowledged that Kang Suk Account was only temporarily being used until Cornerstone is formed and opens a bank account under its name.

9

67. In reliance of fiduciary relationship created, Kim requested that payments from CJ for the CJ Project be wired initially to Kang Suk Account as stated in Paragraphs 64 to 66, and in reliance of such fiduciary relationship, the Subject Fund was wired into Kang Suk Account.

68. On or about June 5, 2017, Kim notified CJ of Cornerstone's new bank account information and asked CJ to wire transfer all the payments to that account thereafter.

69. It was clear to all parties involved, including Defendants, that CJ would send all subsequent payments due under the contract, including the demolition Phase II, to Cornerstone's new account.

70. On or about June 8, 2017, CJ inadvertently wired the Subject Fund to Kang Suk Account instead of Cornerstone's new account.

71. In reliance on the understanding and acknowledgment among all parties involved, including Defendants, as soon as Kim discovered the erroneous wire transfer at issue by CJ, Kim contacted Chi and asked him to return the Subject Fund to Cornerstone.

72. Although Chi clearly knew that the payment was wired to Kang Suk Account due to CJ's mistake and Kang Suk had no right to keep the Subject Fund in Kang Suk Account, Chi refused to return the Fund to Cornerstone.

73. Upon information and belief, while holding the Subject Fund in its account, Chi breached his fiduciary duties to Cornerstone by paying salaries for June 2017 only to himself and his daughter who managed accounting for the CJ Project, whereas he failed and refused to pay the same salaries to Cornerstone and A-Tec without justification.

74. Chi's unauthorized and wrongful use of and interference with the Subject Fund were in derogation of Cornerstone's possessory rights and interests herein and certainly were to Cornerstone's financial detriment.

75. Chi's failure and refusal to return the Subject Fund, and despite Cornerstone's continuous demands, was in breach of his fiduciary duty detrimental to the interests of Cornerstone.

76. As a direct and proximate result of Chi's breach of fiduciary duty owed to Cornerstone, Cornerstone has suffered and will continue to suffer monetary damages in an amount exceeding $75,000, for which Chi is liable.

## DEMAND FOR JURY TRIAL

77. Cornerstone hereby demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Cornerstone demands judgment in its favor as against Defendants as follows:

1. For compensatory damages for conversion, according to proof at trial, but in an amount not less than $75,000;
2. For compensatory damage for unjust enrichment, according to proof at trial, but in an amount not less than $75,000;
3. For compensatory damage for breach of fiduciary duties, according to proof at trial, but an amount not less than $75,000;
4. For constructive trust on monies wrongfully held by Defendants;
5. For the cost of suit, including reasonably attorneys' fees; and
6. For such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 22, 2017

**YOON LLP**
Attorneys for Plaintiff Cornerstone
Construction Consortium, LLC

By: */s/ Charles Yoon*
Charles M. Yoon (CY6890)
11 East 44th Street, Suite 500
New York, New York 10017
T: (212) 584-0058
F: (212) 584-0059

TO: Kang Suk Construction, Inc.
219-03 Northern Blvd., Suite 5
Bayside, New York 11361

Yun Koo Chi
16360 19th Avenue
Whitestone, New York 11357

12